# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY REID, et al., | : | |
| | : | |
| Plaintiffs, | : | CLASS ACTION |
| | : | |
| v. | : | No. 18-CV-0176 |
| | : | Honorable John E. Jones, III |
| JOHN WETZEL, et al., | : | |
| | : | |
| Defendants. | : | |

**NOTICE OF CLASS ACTION**
<u>**PROPOSED SETTLEMENT AND HEARING**</u>

A settlement has been proposed in a class action lawsuit about the rights of prisoners sentenced to execution and confined within the Capital Case Units ("CCU") of the Pennsylvania Department of Corrections ("DOC"). The Court will have a hearing to decide whether to approve the settlement. This Notice contains a summary of the proposed settlement and information about the hearing and your right to object to or comment on the settlement.

**Background of the Lawsuit**

On January 25, 2018, Anthony Reid, Ricardo Natividad, Mark Newton Spotz, Ronald Gibson, and Jermont Cox, filed this lawsuit on behalf of themselves and all current and future death-sentenced prisoners in the Commonwealth of Pennsylvania. Their Complaint alleges that policies and practices of the DOC

relating to such prisoners violate the Eighth and Fourteenth Amendments to the United States Constitution.  On April 3, 2018, the Court certified this case to proceed as a class action on behalf of "all current and future death-sentenced prisoners in the Commonwealth of Pennsylvania."  John Wetzel, Robert Gilmore, and Tammy Ferguson (collectively the "Defendants") deny that they have violated any constitutional rights of the Plaintiffs and the Class.  The suit did not and does not seek money damages for the Plaintiffs or the Class.

**Summary of the Settlement Agreement**

Copies of the settlement agreement will be available for review in the day room of each institution's CCU.  Below is a summary of the class benefits from the agreement:

*Development of a General Population Setting in the CCU*

The CCU will no longer be classified as a Level 5 housing unit requiring enhanced security protocols.  It will instead be operated as a general population unit, albeit one populated exclusively by death-sentenced prisoners.  Accordingly, going forward Plaintiffs and the Class will be provided with all the rights and privileges afforded to prisoners housed on standard general population units at the various institutions of the DOC system.  By operating the CCU as a general population housing unit, Plaintiffs and the Class will no longer be subjected to strip-searching, shackling, tethering, or other physical restraints when moving

about within the unit. They will no longer have clothing of a different color than that worn by non-CCU prisoners, they will be permitted to obtain on-unit and off-unit jobs, and they will be permitted to use the telephone on a daily basis. And, they will have access to congregate religious activities.

Plaintiffs and the Class will be offered at least 42.5 hours of out-of-cell time per week. These out-of-cell activities will include, but are not limited to, yard and outdoor exercise, "Block out" time, law library, congregate meals, treatment or counseling team meetings, religious worship and congregation, work assignments, and organized educational or vocational programming, treatment or recreational programming. Activities such as showers, medical appointments, attorney meetings, classification or disciplinary hearings, or court hearings, however, will not count toward the 42.5 hours of out-of-cell time.

Plaintiffs and the Class will receive re-socialization assistance to help with this transition. Plaintiffs and Class members whose participation in out-of-cell opportunities falls below 25 hours in two weeks within any rolling four-week period will have a meeting with their treatment team in a confidential setting, and a written action plan will be created to help them engage in more activities out-of-cell. Every 90 days, a licensed psychologist will conduct a written audit of all group programs in the CCU to determine the nature and quality of the

programming and to assess whether the programming addresses the needs of the Plaintiffs and the Class.

*CCU Prisoner Discipline*

Plaintiffs and the Class will be subject to the same disciplinary rules and procedures as prisoners housed in standard general population units.

*Physical and Mental Baseline Evaluations*

Within six months of the Court's final approval of the settlement, the DOC will arrange for Plaintiffs and the Class to receive physical and mental health evaluations by independent and licensed physicians for the purposes of establishing baselines.  The mental health evaluations will include an inquiry into and assessment of the impact of previous long-term restrictive housing on each Plaintiff and Class member.  These evaluations, including any modifications that result from any dispute between the parties, shall become part of the Plaintiff's and Class member's institutional medical record to be referred to for all follow-up treatment.  Plaintiffs and Class members have the right to decline to participate in these evaluations if they so choose.

*Phased Contact Visitation*

Within 30 days after the Court's final approval of the agreement, Plaintiffs and the Class will be permitted to have contact visits with their attorneys and spiritual advisors.  Within 60 days after the Court's final approval of the

4

agreement, Defendants will allow each Plaintiff and Class member to have at least one contact visit per month with individuals who have been approved for the individual Plaintiff's or Class member's visitor list.  Within 180 days after the Court's final approval of the agreement, Defendants will allow all visits of Plaintiffs and Class members to be contact visits lasting at least one hour, unless an individual determination is made by the Superintendent that contact visits for a particular Plaintiff or Class member present a serious security threat.

*Monitoring and Termination of the Agreement*

The agreement provides for a period of monitoring by an independent compliance monitor.  The parties have selected Rick Raemisch to serve as that monitor.  During this period, the monitor will report to the Parties and the Court on the DOC's implementation of the terms of the agreement.

*Payment of Plaintiffs' Attorneys' Fees and Costs*

Once the parties had reached agreement on all substantive provisions of their settlement, they commenced negotiations regarding payment of Plaintiffs' attorneys' fees and costs.  The parties have agreed that the DOC will pay Plaintiffs' counsel's costs and reasonable attorneys' fees, in an amount to be determined by the court.  Plaintiffs have requested reimbursement of $_____ in costs and $_____ in attorneys' fees already incurred in this litigation.  Defendants have also agreed to pay reasonable fees and costs to the

5

Plaintiffs' attorneys and their experts for time spent in the monitoring phase of the litigation, and to pay Plaintiffs reasonable attorneys' fees and costs, including expert costs, if Plaintiffs are the prevailing party in any proceedings to enforce the terms of the Agreement.  The parties have represented that their agreement concerning the payment of costs and attorneys' fees had no impact on the substantive relief to the class reflected in the Agreement.

**Fairness Hearing; Objections to the Proposed Settlement**

  The Court will hold a hearing in this case at the address below on _____ \_\_\_\_, 2020 at _____ to decide whether to approve the settlement.  If you do not like the settlement or any part of it, you may object to it.  If you wish to comment on or object to the proposed settlement, you may do so by appearing, via counsel, at the fairness hearing or by sending a letter, marked "Class Settlement in Reid v. Wetzel, No. 18-CV-0176" and postmarked by _____, to the address below:

    Clerk of Court, United States District Court
    Ronald Reagan Federal Bldg. & U.S. Courthouse
    228 Walnut Street
    Harrisburg, PA  17101

Any objections or comments so received will be posted to the public docket in this case.

BY THE COURT:

Dated: _____             _____
                                                     U.S. District Judge John E. Jones III