December 30, 2019

FILED
HARRISBURG, PA

JAN 0 2 2020

Per _____
Deputy Clerk

Clerk of Court, United States District Court
Ronald Reagan Federal Building & U.S. Courthouse
228 Walnut Street
Harrisburg, Pennsylvania 17101

RE: **REID VS. WETZEL, NO. 18-cv-176**

TO THE HONORABLE JOHN E. JONES III OF SAID COURT:

I write to this Honorable Court as a class member of the above stated heading. I have several comments and objections as it relates to this very important litigation.

1. The Capital Case Unit (CCU) has an Unit Manager name Mr. Michael Guyton. The man has been against this litigation and the changes from day one. The facts has been revealed in his words, actions, and deeds. Mr. Guyton has delayed certain changes when he has been ordered to make the changes by Superintendent Robert Gilmore. Instead Mr. Guyton has implemented and/or inflicted his concepts of changes only to be overruled by his superiors. Mr. Guyton is a very combative and deceitful man with no interest to assist or aid the prisoners whom he is suppose to oversee. His position as an Unit Manager is to be an arbitrator between the prisoners and the guards in fairness as well as make sure the unit runs smooth. With him as the Unit Manager there is always a conflict between the prisoners and the staff all caused by the Unit Manager. And when it is prisoner verse guard, Mr. Guyton takes the guards side like ninety percent (90%) of the time. Mr. Guyton concerns himself with small matters to antagonize the prisoners to disturb our daily deal existence and peace while on death row. But at the same time this man does not do his required duties [i.e. approving visiting forms, telephone numbers, acquiring supplies for the unit, etc.]. Myself along with many other prisoners have complained and grieved Mr. Guyton but for reasons unbeknownst to me and other prisoners we don't know why the administration and the DOC won't remove him from the CCU. Please look at this man files and you will conclude the man is not equipped to run the CCU. Mr. Guton's mentality as a Unit Manager is to run the CCU as an Restricted Housing Unit (RHU). We have went to him about being handcuffed in the area of Zone 4 (Z4) using the settlement and the new DOC policy of 7.5.1. And he as well as others ignore the language of the settlement and policy of no cuffing prisoners confined to the CCU unless an "individualized determination". [See: the settlement at pp. 11-12; & DOC policy 7.5.1, pg. 2-2]. In the policy the DOC added "or before traveling to an outside hospital, etc.", this language is not in the settlement. [See: The DOC policy C-5 at pg. 2-2]. This is what Mr. Guyton and others are relying on to continue to handcuff us in the area of Z4 when the Department of Correction agreed with the named plaintiffs unless an individualize determination is made no CCU prisoner will be handcuffed. There is nothing in the settlement and/or policy as to CCU prisoners being handcuffed in an area. This needs to be addressed by this Honorable Court. This kind of conflict is what Mr. Guyton does on the regular basis on the CCU. It is my suggestion that this Court remove Mr. Guyton and his minions from the unit in order for the success of the settlement and new policy. This way it would be a new start with a new policy, new Unit Manager, and a new block staff.

2. The yard is below any standard of recreations due to it's configurations. The diagram of SCI-Greene's yard does not clearly depict the accuracy of the yard. The administration broke down the all the individual cages and basically four yards in very small area. The former yard was made up of twenty-seven individual cages. The administration first split the yard in four sections. The made up was three big cages and four isolated cages. Then the administration put exercising machines inside the three years.

Two of the machine were never full equipped. It is just two pieces of metal in the yard. The administration just put these machines, tables, and basketball hoops inside these three big cages with no design. Two of the three basketball hoops are right beside a tables leave no room to truly play basketball. Also the hoops are only 8 foot, four inches inside cages with gate roof of about eleven feet. A basketball hoop is ten feet tall so one need the ceiling to be a level to accommodate the shooter shoot. After awhile the administration split the three big cages into two cages with the four isolated cages for phase two prisoners. The administration refuses to take the top off even though every yard for population prisoners do not have closed in gate roof. The design of the yard is not accurately represented and/or depicted in the diagram presented to the Court because there are poles through out the both yards due to the former configuration of the yard that was full of individual cages. The DOC was disingenuous by making a diagram of SCI-Greene's yard without all the poles and gated roof as well as for withholding SCI-Phoenix's yard diagram from the class member housed at SCI-Greene. The two yards are not comparable. There is not one yard in the state Pennsylvania's penal system design for population prisoner that resemble the yard at SCI-Greene for CCU prisoners. The housing unit and the yard was built for solitary confinement prisoners, the DOC and SCI-Greene is trying to use a confined house area and make it a population housing unit without spending any money.

3. The law library is made up of area of four isolated cages. The configuration was made for solitary confinement prisoners. The administration refuses to remove the cages. We were told that the law library would be made over as to a population law library. It was suppose to be remodel but the administration has the cages in tact for no reason but for Mr. Guyton said he would not remodel the law library. Also, the population law library has had a word processor and a printer for years. The CCU is being denied access to a word processor and printer.

4. The yard has no bathroom, no water fountain, no roof cover (i.e., from the Sun and rain).

5. Every block in population has a Block Representative. The CCU would like a "Block Representative" so that our issues are heard and addressed on their merit. Due to the change of status of the CCU, we no longer have Program Review Committee (PRC). DOC should allowing the CCU prisoners should be represented by having a seat at the table would allow us to be heard on the issues concern us and our housing at SCI-Greene.

6. The handcuff in Z4 is inappropriate as stated of above in Issue One. I kindly request this Court to look into this violation of the Settlement Agreement and DOC policy of 7.5.1 as it relates to handcuffing a CCU prisoner.

7. Due to the Settlement Agreement we are now allowed schooling, programs, and religious services basis. To be perfect honest with this Court, there is no room in the CCU at SCI-Greene for schooling, programs, and religious services. The administration are allowing one GED classes per week. When in population, the prisoners go to school five days a week plus they get paid for taking the GED class. The CCU prisoners are not getting paid to go to school at SCI-Greene as require by policy. This unfair to the core. As for religious services and programs, the Muslims do not have an outside Imam to lead them in Jum'ah prayers as population is so afforded. The administration allows a population prisoner to perform the Jum'ah service. This does not occur for no other religion in the CCU or in general population. We have asked the administration to hire a second Imam for our community and/or allow us to go to Jum'ah services with general population. We are allowed to taking the GED test with general population prisoners, it is done in general population. I do not see a problem with CCU prisoners attending Jum'uh, and/or other religious services, concerts, schooling, classes, and other activities with general population poisoners. I ask

the Court in this matter because this CCU is not equipped for a general population for CCU prisoners. I request that this Honorable Court do an investigastion to see if this institution is equipped and if the Court makes a finding of this not be equipped for CCU housing, we would like a transfer SCI-Phoenx.

8. The block phones never turned off on the CCU prior to the current litigation. We were allowed to use the telephones during the time it came on until the time it went off (i.e. 8:00 am to 8:45 pm). The CCU had roller phones, one for each tier and two per pod. The phone now coming on at 7:30 am and cut off first of the day at 9:15 am for lunch. The phone comes back on at 10:30 am. According to the settlement we get twenty minutes out the cell for lunch and dinner. Let say for the sake of argument, that the trays comes at 9:30 am. and we take twenty minutes to eating of the meal. There is no reasonable excuse that the phone has to cut off for extra forty minutes. This is a time that a lot of us prisoners call our lawyers at the Resource Center. The phones coming back on from 10:30 am to 12:15 pm. And count time is 12:30 pm and count time clears about 1:00 pm. The telephone is cut back on at that time and we are allow to use it up until 1:45 pm because we have to go in due to shift change. Now, the Resource Center shut their phone line down from 12:45 pm to 1:30 pm. The phone then cut off at 3:30 pm until 5:00 pm. due to dinner time and count time. The meal is around 4:00 pm and count time is around 4:15 pm. Count time is unusually cleared at about 4:30 pm. It is my request that once lunch is concluded that the telephones comes on around 9:50 am to 10:00 am. My second request is that the telephones comes back as soon as count clears which would be around 4:30 pm. This last half an hour will allow the prisoners to make an evening time call to my lawyers. Capital Case prisoners make the most calls to their attorney then all other class of prisoners. We just want the most opportunities to call our lawyers.

9. There are a lot of older men and unhealthy men on the CCU. In the former policy of 6.5.8 for CCU prisoners, there was access to a separated chair other than the stool connected to the desk. SCI-Greene has never implemented that part of the policy. The stool that is connected to the desk is very uncomfortable when sitting for a long period of time. I would request a chair as cited in the former policy off 6.5.8.

**CONCLUSION:**

I want to thank all parties involved in this very serious matter. I pray that this Honorable Court take my comments and objections into consideration.

Respectfully Submitted,

Christopher Roney

cc/CR

Smart Communications/PADOC

SCI- GREENE

Name CHRISTOPHER ROWLEY

Number DF1973

PO Box 33028
St Petersburg FL 33733

PA DEPT OF
CORRECTIONS
INMATE MAIL

U.S. POSTAGE >> PITNEY BOWES

ZIP 15370
02 4W
0000355500 DEC 31 2019
$ 000.50°

CLERK OF COURT, UNITED STATES DISTRICT COURT
RONALD REAGAN FEDERAL BUILDING + U.S. COURTHOUSE
228 WALNUT STREET
HARRISBURG, PA. 17101

RECEIVED
HARRISBURG, PA
JAN 02 2020
PER _____
DEPUTY CLERK