Case 1:18-cv-00176-JEJ Document 173 Filed 11/17/20 Page 1 of 11

FILED
HARRISBURG, PA
NOV 17 2020
PER _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony Reid, et al.<br>Plaintiffs<br>v.<br>John Wetzel, et al.<br>Defendants | : <br> : <br> : <br> : <br> : | 1:18-cv-176 <br><br> Hon. John E. Jones, III |

## MOTION TO ENFORCE SETTLEMENT AGREEMENT

And now, this 12th day of November, 2020, comes the Class, by and through named Plaintiffs/Class Representatives, beseeching this Honorable Court to recognize and remedy the Defendants' **SUBSTANTIAL NON-COMPLIANCE** with the Settlement Agreement ORDERED by this Court on April 9, 2020.

### I. BACKGROUND

On January 25, 2018 Plaintiffs Anthony Reid, Ricardo Natividad, Mark Newton Spotz, Ronald Gibson and Jermont Cox filed a suit on behalf of a class of death-sentenced prisoners confined in one of the Capital Case Units (the "CCU") of Pennsylvania's Department of Corrections ("DOC"). The Complaint alleged that the Commonwealth's policy and practice of holding class members in permanent solitary confinment violated the 8th and 14th Amendments of the United States Constitution.

On April 3, 2018 this Honorable Court certified the Class as a class action on behalf of "all current and future death-sentenced prisoners in the Commonwealth of Pennsylvania" with Reid, Natividad, Spotz, Gibson and Cox serving as Class Representatives.

In August of 2018, following class certification and extensive discovery, counsel began settlement negotiations. These discussions culminated in a Settlement Agreement dated November 12, 2019 (the "Agreement").

On November 20, 2019 this Honorable Court preliminarily approved the Agreement. Notice was provided to entire Class, objections were permitted until March 9th and a

fairness hearing was held March 16, 2020.

On April 9, 2020 this Honorable Court issued its Memorandum and ORDER granting final approval. At that time Defendants were given six months (i.e., until October 9, 2020) to fully implement the Agreement.

In a unilateral decision made by the Defendants, from July 15, 2020 through July 21, 2020 the two CCU's were consolidated at one location; SCI Greene's CCU joined the SCI Phoenix CCU. Since this time, the SCI Phoenix Administration and the DOC have obstinately refused to fully implement the Agreement.

## II. FACTUAL BASIS IN FAVOR OF ENFORCEMENT ORDER

**1.** Residential Setting of General Population.

"The CCU SHALL BE OPERATED AS a General Population Unit" ("GPU")... "NO LONGER classified as a Level 5 housing unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1); "COMPARABLE TO other GPUs (V,A,2), "SUBJECT TO THE SAME disciplinary rules and PROCEDURES as prisoners in THE STANDARD GPUs (V,B,1); "Although the foregoing are REQUIRED MINIMUM STANDARDS, the parties agree that the goal in managing the CCU is to approximate AS CLOSELY AS POSSIBLE THE RESIDENTIAL SETTING of prisoners confined in the GPUs" (V,A,2,g.).

The "required minimum standards are NOT being complied with let alone any effort toward normalinzing the residential setting.

One example of this is the way inmate separations for CCU prisoners are being handled in direct contradiction with DOC policy, procedure and protocol, but COMPLIES COMPLETELY with said policy for L5 and AC Unit prisoners; which has resulted in, and will continue to result in unjust loss of privileges and restricted

movement without misconduct adjudication/sanction.

The Class seeks opportunity to brief this issue in detail.

2. Law Library Access

"The CCU SHALL BE OPERATED AS a General Population Unit" ("GPU")... "NO LONGER classified as a Level 5 housing unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1); "COMPARABLE TO other GPUs" (@ V,A,2) ... "legal materials and A LAW LIBRARY including: (i) ... direct and personal access to a legal database .. (ii) adequate lighting, seating for no fewer than two people, desk space adequate for a work area and shelving that is secure, (iii) ... list of materials available ... procedure to request use of ... hours the law library is available. A typewriter, computer, or word processor ... printer located IN the law library, (iv) open and available daily" (@ q.).

THIS IS NOT PROVIDED. What is provided is a computer bolted to the wall; a small, wheeled cart of approximately 20 legal books; a word processor on a wheeled cart; ALL SET IN THE WIDE OPEN COMMON AREA of the housing unit which is used and occupied daily, from 7:00am to 9:00pm, for block out, table games, two blaring loud 45" TVs mounted on the wall directly overhead of the computer, talking, yelling etc. as one would envision a general population common area for congregate activities to be; akin to doing ones legal reseach and writing on a crowded subway car. THERE IS NO LAW LIBRARY "room" that in any way comports with the Agreement.

The Class seeks opportunity to brief this issue in detail.

3. Opportunity to Socialize With Other CCU Prisoners.

"The CCU SHALL BE OPERATED AS a GPU... "NO LONGER classified as a Level 5 housing

unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1); "The out-of-cell activities afforded to EVERY CCU PRISONER SHALL INCLUDE, but are not limited to: yard and outdoor exercise, "Block-out time;" Law Library ..." (V,2,h,(I),(II),(III)) and these activities MUST BE "comparable to other GPUs" (V,A,2).

The Class is being discriminated against in the area of socialization with other CCU prisoners. The DOC is permitting all GPUs to congregate in groups of, for example, 36 persons but limits the CCU to only 18 persons. In other words, when congregate activities/time are set by specific number of persons, the CCU is consistently restricted to ½ that number and therefore incomparable to the GPU residential setting. The Class is consistently told "We (SCI Phoenix Administration) will not give you more than GP," yet they have no reservations about restricting the Class to less than GP. This goes to the heart of the original complaint giving rise to this Class Action.

The Class seeks opportunity to brief this issue in detail.

**4.** Educational, Vocational, Treatment and Recreational Programming.

"The CCU SHALL BE OPERATED AS a General Population Unit" ("GPU")... "NO LONGER classified as a Level 5 housing unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1); "COMPARABLE TO other GPUs ... the CCU SHALL HAVE ..." (@ V,A,2); "The out-of-cell activities offered to EVERY CCU PRISONER SHALL INCLUDE, but are not limited to: Organized educational or vocational programming; treatment of recreational programming"

(V,A,2,viii & ix); "prisoners confined in the CCU SHALL HAVE access to educational programming" (V,A,2,O).

Daily program services lines are called for all GPUs EXCEPT FOR THE CCU; including educational (A.B.E., G.E.D., College courses, various certificate classes, etc.), vocational (carpentry, masonry, heating & air conditioning, etc.), treatment (A.A., N.A., Stress & Anger Mgmt., Parenting, etc.), and recreational programs (i.e., use of indoor gymnasium, sporting & gaming tournaments, etc.). The design/construction of the GPUs does not provide for on-unit programming in that there are no rooms on the GPUs to accommodate such. The CCU is located on P-Block, a GPU at SCI Phoenix. As with all other GPUs, the CCU can only receive programming by going to the Program Services Building, located 10 feet from and adjacent to P-Block.

The Class was told by the DOC, through Class counsel, that the Class will be provided programming consistent with the Agreement ONLY IF the Class first agrees to forego the agreed upon "clothing clause" of the Agreement; if the Class refuses, the programming so desperately needed by all CCU prisoners WILL NOT BE PROVIDED. The Class is being strong-armed and extorted by the Defendants. The Class needs this Honorable Court's intervention.

The Class seeks opportunity to brief this issue in detail.

5. Off Unit Employment.

"The CCU SHALL BE OPERATED AS a General Population Unit" ("GPU")... "NO LONGER classified as a Level 5 housing unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1); "COMPARABLE TO other GPUs the CCU SHALL ..." (@ V,A,2); "BE PERMITTED to obtain a work assignment.

Such work assignments SHALL INCLUDE on-unit jobs, AS WELL AS JOBS OCCURRING OUTSIDE, BUT ADJACENT TO, THE CCU - including but NOT LIMITED TO ground keeping, snow-removal and grass-mowing work" (@ d.). "[The Class] WILL BE PERMITTED TO obtain jobs both on the unit and at least some off-unit placements" (Memorandum and ORDER of April 9, 2020; Hon. John E. Jones, III).

The DOC, consistent with policies for prisoners housed in L5 and AC Units, has REFUSED to permit any off-unit job assignments. While housed at SCI Greene there were approximately 30 off-unit jobs assigned to CCU prisoners. Despite there being a plethora of job assignments in the adjacent building, upon consolidation of the CC population to a single location, SCI Phoenix, ALL OFF-UNIT JOBS WERE TAKEN AWAY and this restriction is said to be permanent, in direct violation of the Agreement.

The Class seeks opportunity to brief this issue in detail.

6. Mental Health Treatment.

"The CCU SHALL BE OPERATED AS a General Population Unit" ("GPU")... "NO LONGER classified as a Level 5 housing unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1); "COMPARABLE TO other GPUs ... prisoners confined in the CCU SHALL HAVE ACCESS TO ... MENTAL HEALTH CARE, including psychiatric care, of prisoners confined in the CCU SHALL BE RENDERED in accordance with 13.8.1 Access To Mental Health Care ... prisoners confined in the CCU SHALL HAVE ACCESS to all DOC mental health and health care units (including those at other DOC facilities)" (V.A.2 @ C.1 & 3).

SCI Phoenix DOES offer a wide array of mental health programming; however, CONSISTENT WITH L5 and AC unit policy, participation is denied to the Class thus preventing a GP residential setting from being achieved.

The Class seeks opportunity to brief this issue in detail.

**7.** 42.5 Hours of Out-Of-Cell Time Weekly.

"The CCU SHALL BE OPERATED AS a General Population Unit" ("GPU")... "NO LONGER classified as a Level 5 housing unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1); "Within 30 days of the Effective Date, prisoners confined in the CCU SHALL BE OFFERED AT LEAST 42.5 hours of out-of-cell time for activities per week ... REQUIRED MINIMUM STANDARDS" (@ g.). "Importantly, class members WILL BE OFFERED AT LEAST 42.5 hours of out-of-cell time per week" (Memorandum and ORDER of April 9, 2020; Hon. John E. Jones, III.) Since the consolidation of CCUs at SCI Phoenix, the DOC has consistently DENIED the Class the agreed upon "REQUIRED MINIMUM STANDARDS" of 42.5 hours of out-of-cell time weekly. They have manipulated group size for congregation/socialization, requiring double the number of groups than that of GP, as a means of justification for their REFUSAL TO COMPLY with the Agreement.

The Class seeks opportunity to brief this issue at length.

**8.** Showers.

"The CCU SHALL BE OPERATED AS a General Population Unit" ("GPU")... "NO LONGER classified as a Level 5 housing unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1). "Within 30 days of the Effective Date, prisoners confined in the CCU SHALL BE OFFERED AT LEAST ... 42.5 hours of out-of-cell time for activities weekly" (@ g.); "The requirement of

out-of-cell time set forth in paragraph g., supra, SHALL NOT BE SATISFIED BY such activities as SHOWERS ..." (@ i.).

The DOC has been and pledges to continue FORCING the Class to use a portion of their daily out-of-cell time for showering, thus limiting their opportunity for indoor and outdoor activities, in violation of the Agreement.

The Class seeks opportunity to brief this issue at length.

9. Clothing.

"The CCU SHALL BE OPERATED AS a General Population Unit" ("GPU")... "NO LONGER classified as a Level 5 housing unit ... THE CCU SHALL NOT BE subject to ANY DOC POLICY specific to an AC Unit. Prisoners confined to the CCU SHALL BE provided with ALL the rights and privileges afforded to those prisoners housed on standard GPU's at the various institutions of the DOC system" (Agreement @ V,A,1); "COMPARABLE TO other GPUs" (@ V,A,2), "prisoners confined in the CCU SHALL NOT be required to wear clothing of a different color or style from those worn by non-CCU prisoners" (@ c.); "CCU inmates WILL NO LONGER BE ... marked by a different colored clothing" (Memorandum and ORDER of April 9, 2020; Hon. John E. Jones III.).

As mentioned herein @ II., 4., the DOC is seeking a FORCED CONCESSION by the Class to return to "clothing other than" that of GP, under THREAT of CONTINUED DEPRIVATION of educational, vocational, treatment and recreational programming and CONTINUED RESTRICTION OF MOVEMENT to attend said programming in the Program Services Building. This is AT LEAST a grotesque display of institutional/official oppression and unprofessional conduct by an Agency of the Commonwealth; PERHAPS an illegal violation of the civil rights of the Class; CERTAINLY a clear violation of the Agreement.

The Class seeks opportunity to brief this issue in detail.

## III. CLOSING

More than 200 Official Inmate Grievances have been filed by the Class, alerting the DOC to its violations and substantial non-compliance in implementing the Agreement. The DOC's absurd assertions, illogical conclusions and defiant refusal to correct its violations and fully implement the Agreement are clearly documented in their responses. The Class seeks opportunity to present these documents to the Court.

**WHEREFORE,** the Class, by and through the undersigned Class Representatives, humbly implores this Honorable Court to: permit the Class opportunity to brief the aforementioned issues; schedule a hearing on the matter of the Defendant's substantial non-compliance; issue and ORDER of Enforcement upon the Defendants to immediately comply with ALL aspects of the Agreement.

Respectfully Submitted,

_____
Anthony Reid

_____
Ricardo Natividad

_____
Mark Newton Spotz

_____
Ronald Gobson

_____
Jermont Cox

CERTIFICATE OF SERVICE

I, Mark Newton Spotz, hereby certify, under penalty of law, that I have this day cause to be served a true & correct copy of this document upon the following & by the means indicated:

Jospeh G. Fulginiti, ESQ.
Office of Chief Counsel
Pa. DOC
1920 Technology Parkway
Mechanicsburg, PA.
17050

VIA FIRST CLASS MAIL

Susan M. Lin, ESQ. The Cast Iron Bldg.
718 Arch St., Ste. 501 South
Phila., PA.
19106

VIA FIRST CLASS MAIL

Signature: Mark Newton Spotz                Date: November 12, 2020
             Mark Newton Spotz

Ricardo B. McClure, Jr.
41 A Thomas St
HBG., PA 17103

HARRISBURG PA 17¢
14 NOV 20

RECEIVED
HARRISBURG, PA
NOV 17 2020
PER _____
DEPUTY CLERK

District Court of Pennsylvania
228 Walnut St
HBG. PA 17101

17101-171499